On 15 December, 1822, Solomon Marsh made the deed in question, and delivered it to James (242) Marsh, to be kept for the benefit of the plaintiff and her two sons, as the bill alleges. The deed recites, that for the natural love and good will that the donor had for his married daughter (the plaintiff), he, "by these presents, do freely give and grant to the said Eunice Ashcraft and her children, a negro girl ten years old, by the name of Clarissa, and her increase; but the said gift to extend to no otherperson." Clarissa has now several children. The bill is filed by the plaintiff, against her husband and Alexander Little and others, who claim the slaves under a judgment and execution against her husband, to have one-third of them secured to her sole and separate use. The defendants have demurred. The demurrer was sustained in the Court of Equity for Anson County, and the bill was decreed to be dismissed. The plaintiff then appealed.
Any person may make a gift to the wife of another man, and shut out the husband's interference, by clearly expressing such an intention in the instrument creating the gift. Lewin on Trusts, 148. But whether a trustee is appointed or not, the *Page 188 
intention of the testator or settlor, of excluding the husband, must not be left to inference, but must be clearly and unequivocally declared. For, as the husband is bound to maintain his wife, and bears the burthen of her encumbrances, he has, primafacie, a right to her property. But provided the meaning be certain, the court of equity will execute the intention, though the settlor may not have expressed himself in technical language, Lewin, 148, 150 (marg. page) and 2 Story Eq., 909, 910, where all the authorities are collected and remarked on. If Marsh had said thus in his deed of gift, "but the said gift is not to extend to my daughter's husband," or "she is to have it independent of her husband," it would then have been clear that the husband was intended to be excluded, and the property would go to the separate use of the wife. Wagstaff v. Smith, 9 Ves., 520. Simons v. Howard, 1 Keen, 7. So if the (243) gift had been to Eunice Ashcraft and her children, "independent of any other person," it would have been a separate estate to the wife of her share. Margetts v. Margetts, 10; Cond. Eng. C., 158. This case is, in my opinion, very much in point. It was as follows: John Eustace, by his will, gave all the rest and residue of his estate and effects unto Louisa Margetts (a married woman) and Ann Margetts, her daughter, to be equally divided between them, share and share alike, for their own use and benefit,"independent of another person." The vice-chancellor said, that the words, "independent of any other person" meant, "independent of all mankind," and therefore included the husband, and the wife had a separate estate. This case was well considered, I presume, as the reporter informs us, that Mr. Barber and Mr. Parker were counsel in the cause. It seems to me that the words, "independent of any other person," are in meaning, the same as the words, "and to extend to no other person." If, therefore, the first set of words, when applied to Mrs. Margetts (a married woman) and her daughter, gave the feme covert a separate estate in the legacy (as we see they did), it is plain and clear, that the latter set of words ("and to extend to no other person") must also exclude the husband; and give the negroes to Mrs. Ashcraft and her two sons then born. The case reported is a gift to Mrs. Margetts and her daughter Ann Margetts; the case before us is a gift to Mrs. Ashcraft and her two sons. I ask, where is the difference? Rudisell v. Watson, 17 N.C. 430, was a decision that has no bearing on the case now before the Court. It was a devise and bequest, by a father to his married daughter, "to her and her heirs proper use"; and this Court said, that the words "to her proper use" did not clearly mean *Page 189 
to convey the estate "to her separate use." As to the two children of Mrs. Ashcraft, the deed would have conveyed to each of them, his one-third part of the slaves, without supplementary words used by the donor. But as Mrs. Ashcraft was afeme covert, the donor used the words, "independent of (244) any other person," to exclude her husband: he being the only person in the world, that the said words could have any effect or bearing on. If the donor did not mean to exclude him, I would ask whom did he mean to exclude? The words have no meaning at all, if they do not exclude the husband. To say that the husband is not clearly meant to be excluded by the words used, is to say that no words in the English language, which may be used in deeds or wills, can exclude the husband, unless he is expressly or particularly named; and such a decision has not yet been made in any court. I think the demurrer ought to be overruled.
PER CURIAM. Decree below affirmed, the demurrer sustained and the bill dismissed with costs.
Cited: Baron v. Holt, 47 N.C. 225; Freeman v. Moses, 55 N.C. 25;Young v. Young, 56 N.C. 219; Smith v. Martin, 59 N.C. 182; McKenzie v.Sumner, 114 N.C. 429.